1  Jon R. Parsons (Cal. State Bar No. 88045)
   JON R. PARSONS LAW FIRM
2  2225 E Bayshore Road, Suite 210
   P.O. Box 50579
3  Palo Alto, California  94303
   Telephone: (650) 321-8579
4  email:  jon@jrplaw.com

5  Attorney for Plaintiff Scott Ard

6

7

8                      UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12

13  SCOTT ARD, an individual,              CASE NO.

14        Plaintiff,

15  vs.                                     COMPLAINT FOR DAMAGES,
                                            DECLARATORY JUDGMENT, AND
16  YAHOO!, INC., a Delaware corporation,   INJUNCTIVE RELIEF

17        Defendant,                        DEMAND FOR JURY TRIAL

18

19        Plaintiff Scott Ard alleges:

20                              JURISDICTION

21        1.      This Court has subject matter jurisdiction of this action based on federal

22  question grounds pursuant to 28 USC Section 1331. The complaint alleges violations of

23  Title VII of the Civil Rights Act of 1964 (42 USC Sections 2000e-2(a) et seq.), and the

24  Worker Adjustment and Retraining Notification provisions of 29 USC Section 2101 et seq.,

25  together with their adopted regulations (20 CFR Part 639). This Court has supplemental

26  jurisdiction over the California state law claims which are all so related to the claims giving

27  rise to the Court's original jurisdiction that they form part of the same case and controversy

28  pursuant to 28 USC Section 1367(a).

JON R. PARSONS
LAW FIRM

2.     This action arises in Santa Clara County, California, and venue assignment is proper in the San Jose Division of this Court. Plaintiff was employed in Defendant Yahoo's principal executive office located in Santa Clara County and the events alleged below were performed at or through Defendant Yahoo's offices in Santa Clara County.

### THE PARTIES

3.     Plaintiff Scott Ard ("Plaintiff") is an adult individual and a citizen of the State of California. Plaintiff is male and was at the time of the events alleged below a resident of Alameda County, State of California.

4.     Defendant Yahoo!, Inc. ("Yahoo") is a corporation formed in the State of Delaware with its principal office in Santa Clara County, State of California, and is a citizen of the States of California and Delaware. At the time of the events alleged below Yahoo was qualified to do business in California and conducting business in California with more than ten thousand employees in offices and facilities throughout the state and globally, including its chief executive office in Santa Clara County, California.

### PLAINTIFF'S EMPLOYMENT BY YAHOO AND ITS TERMINATION

5.     Yahoo employed Plaintiff by means of a written offer letter ("the Offer Letter") dated September 6, 2011. Portions of the Offer Letter may be subject to a confidentiality agreement and accordingly it is not attached to this Complaint. The Offer Letter used phrases such as "You'll be investing your time with us. And we are ready to invest in you." The Offer Letter promised Plaintiff that "In return for you bringing your expertise ... we plan on making it worth your time." The Offer Letter stated that Yahoo was "committed to doing business ethically." Moreover, the Offer Letter contained much optimistic and disarming language and assurances such as, "We're really excited to have you on our team and can't wait to receive your acceptance..." and, "We can't wait to start working with you and hope that you'll find working at Yahoo! one of the most rewarding experiences of your life ...". Although the Offer Letter stated the employment was "at will", it did so dismissively, as if a mere perfunctory obligation, and introduced the subject with the phrase "We interrupt this

fantastic offer with a word from our lawyers:" The cumulative effect of this language led Plaintiff to believe that Yahoo would not terminate Plaintiff's employment without some just reason honestly held.

6.    Plaintiff accepted the Offer Letter on September 7, 2011, and signed an Employee Confidentiality and Assignment of Inventions Agreement on September 19, 2011. Plaintiff commenced employment with Yahoo on September 19, 2011, as Senior Director, Editorial. Plaintiff initially managed the editorial programming of the Yahoo Homepage, Yahoo.com, within the Media Org. At the time he commenced working Plaintiff signed additional documents including an employment agreement, Privacy Policy Acknowledgment, and Code of Ethics Acknowledgment. Portions of these documents may be subject to a confidentiality agreement and accordingly they are not attached to this Complaint.

7.    Plaintiff faithfully performed all tasks and duties assigned to or required of him in a timely and competent manner with demonstrable positive results. Prior to Kathy Savitt ("Savitt") and Megan Liberman ("Liberman") taking over management of the Media Org at Yahoo in early 2014, Plaintiff received stock options and performance reviews indicating that his performance was fully satisfactory. Indeed, prior to Savitt and Liberman taking over the Media Org, Plaintiff received performance ratings of "exceeds," or "greatly exceeds" in five out of seven quarters. During the fiscal quarter leading up to his termination Plaintiff oversaw a one hundred and ninety percent (190%) increase in social referrals (compared with the twenty percent Media Org-wide goal), and filed his second patent for Yahoo.

8.    Kathy Savitt is a female who at the time of the events alleged below was the Chief Marketing Officer, reporting directly to Mayer. Megan Liberman is a female who at the time of the events alleged below was Defendant Yahoo's Vice-President – News, reporting to Savitt. When Savitt assumed leadership of the Media Org in January 2014, Plaintiff reported directly to Savitt. In February 2014, Plaintiff received a telephone call from Savitt informing him that Plaintiff would begin reporting to Liberman. During this phone call, Savitt explained that the change was necessary because Savitt had "too many direct reports" and said Plaintiff was "part of the solution, not part of the problem."

1    9.    In June 2014, Liberman informed Plaintiff that Homepage leadership would be

2  transferred to Lauren Johnston, a female recently hired by Liberman. The main reason,

3  according to Liberman, was to concentrate more editorial leadership in New York City where

4  Liberman was based. Liberman explained to Plaintiff that his pay and title were not

5  changing and he would retain editorial responsibilities for Yahoo Autos, Yahoo Shopping,

6  and Yahoo Small Business, as well as management of the portal partnership between AT&T

7  and Yahoo. The change became effective in July 2014.

8    10.    On January 30, 2015, Liberman informed Plaintiff during a telephonic

9  performance review that his performance was not satisfactory and he was being terminated

10  effective that day. During this phone call Liberman stated that she was terminating Plaintiff

11  because she had not received a requested breakdown of Plaintiff's duties. Plaintiff had

12  already provided that very information as requested, however, and reminded Liberman that

13  he had done so. Liberman, on the other hand, had failed to prepare or provide Plaintiff with

14  any assessment of Plaintiff's duties, as she was required to do by Yahoo's written policies.

15  Liberman's excuse for terminating Plaintiff was a pretext.

16    11.    Immediately following the phone call with Liberman, Plaintiff met personally

17  with Artimiss Fagerlund, a Yahoo HR representative who was on the termination phone call

18  between Plaintiff and Liberman. Plaintiff asked to receive a copy his performance review

19  and stated his desire to file an appeal. Both requests were denied and Plaintiff was ordered

20  to turn in his laptop and depart the premises immediately.

21    12.    On February 2, 2015, Plaintiff sent a letter to Savitt and to Jackie Reses, as

22  Yahoo's Chief Human Resources Officer, that requested once more a copy of his review

23  and a desire to appeal, both of which should have been available to Yahoo employees

24  pursuant to Yahoo's written and established policies. Both requests were ignored or silently

25  denied.

26    13.    In the February 2, 2015, letter Plaintiff also requested to have his status

27  changed from being terminated for supposed performance issues to an at-will layoff without

28  stated grounds. This modification would have resulted in a modest increase in the

1  severance available to Plaintiff, but more importantly would have allowed Plaintiff to pursue
2  future employment in another area at Yahoo Plaintiff had requested a transfer and was
3  actively engaged with Yahoo's search team when he was terminated. This request was also
4  ignored or silently denied.

5  ### YAHOO'S ADOPTION AND ABUSE OF THE QPR PROCESS

6       14.    On July 17, 2012, Mayer became President and CEO of Defendant Yahoo. In
7  about August 2012, Mayer caused Yahoo to adopt and implement a new management
8  device called Quarterly Performance Reviews ("QPRs") as part of a procedure (the "QPR
9  Process") used to manage and reduce Defendant Yahoo's workforce.

10       15.    Yahoo's QPR Process closely resembles a form of employment management
11  technique called variously "forced distribution," "forced ranking," or "stack ranking," (here
12  "Stack Ranking"), formerly used at companies such as GE and Microsoft. Compared with
13  Yahoo's QPR Process the Stack Ranking procedures used by other large employers were
14  usually annual rather than quarterly, provided more employee feedback and transparency,
15  and were less draconian in their application. Yahoo's QPR Process permitted manipulation
16  without oversight or accountability, and was thus more arbitrary and discriminatory than the
17  stack ranking used for a while by other employers.

18       16.    Yahoo's QPR Process as expressed in the Media Org involved several steps.
19  The manager who directly supervised the employee assigned each employee a rating
20  number from 0.0 to 5.0 (the "Employee Score") based on how that employee performed
21  compared with his or her immediate peers. This number resulted in that employee being
22  placed into one of five ranks. These ranks, called "Buckets", were labeled "Greatly
23  Exceeds," "Exceeds," "Achieves," Occasionally Misses," and "Misses". Each quarter a
24  specified percentage of each department's employee population would be assigned to each
25  Bucket. Managers were required to rank their employees so that a sufficient number of
26  employees were assigned to each Bucket, even if all the employees were performing well or
27  at the same level. Managers were each given a targeted mean Employee Score for all of
28  their reports. The managers then entered their Employee Scores into the company

JON R. PARSONS
LAW FIRM

1 | computer system.

2 | 17. Yahoo's QPR Process in the Media Org involved a second step called
3 | "Calibration." During Calibration the managers' input Employee Scores were modified up or
4 | down by higher-level management, who often had no actual contact with the employee
5 | whose Score they were modifying. Management personnel adjusting the numbers during
6 | Calibration were not required to report why they made the modifications and there was no
7 | oversight or accounting whatsoever for upper management's manipulation of an employee's
8 | original ranking. The employees were never told their actual numeric ranking or how it had
9 | been determined, but were only informed of their Bucket ranking or that they were being
10 | terminated because of that ranking. The QPR Process therefore permitted and encouraged
11 | discrimination based on gender or any other personal bias held by management.

12 | 18. An employee's quarterly Score and Bucket could result in immediate
13 | termination, such as recently when Yahoo changed the effect of the QPR Process so that a
14 | single "Occasionally Misses" ranking justified termination regardless of a manager's intent.
15 | Those not immediately terminated that quarter could have their Employee Scores averaged
16 | over three or four quarters for a second-tier determination whether or not they should be
17 | terminated. At one point, for example, two "Occasionally Misses" within a one-year period
18 | would result in termination. For some quarters the scores were averaged over a period of
19 | several quarters and the "bottom 5 percent" were terminated. Plaintiff is informed and
20 | alleges that these employees were typically terminated weeks after their performance
21 | review session had been conducted and after an opportunity to appeal their quarterly
22 | ratings. The QPR Process was opaque and the employees did not know who was making
23 | the final decisions, what numbers were being assigned by whom along the way, or why
24 | those numbers were being changed. This manipulation of the QPR Process permitted
25 | employment decisions, including terminations, to be made on the basis of personal biases
26 | and stereotyping.

27 | 19. The rules implementing the QPR Process were vaguely drawn and
28 | communicated on a need-to-know basis. The percentages assigned to each of the five

1 | Buckets might change from quarter to quarter company-wide, and different departments (or

2 | "orgs") would be assigned different percentages. For example, the Media Org might be

3 | required to label 15 percent of its employees as "missing" expectations while Engineering

4 | would only be required to identify 5 percent of its employees as "missing."

5 | 20. At the time that Defendants Mayer and Yahoo adopted the QPR Process, the

6 | practice of Stack Ranking was being increasingly criticized in the press and rejected by

7 | larger employers. For example, in August 2012, *Vanity Fair* published a widely read and

8 | reported article by Kurt Eichenwald on "Microsoft's Lost Decade" that persuasively

9 | impeached Microsoft's use of Stack Ranking. By November 2013, Microsoft had abandoned

10 | Stack Ranking. Moreover, at the time that Defendants Mayer and Yahoo were adopting their

11 | QPR Process, Stack Ranking had been successfully challenged in class-action lawsuits

12 | against companies such as Ford Motor Co., 3M, Goodyear, and Capital One. Litigation is

13 | currently pending against Microsoft on account of the discriminatory effect of its Stack

14 | Ranking system. Thus, Defendant Yahoo and Mayer knew that the version of Stack Ranking

15 | being implemented in Yahoo's QPR Process was subject to abuse, often resulted in claims

16 | of discrimination, and needed to be closely monitored in application and effect.

17 | 21. Yahoo management has publicly denied any connection between its QPR

18 | Process and the Stack Ranking devices used by other companies. When Yahoo's QPR

19 | Process was compared with Stack Ranking practices during employee meetings, Mayer

20 | publicly denied that the QPR process resembled Stack Ranking. Mayer stated on December

21 | 21, 2012, "I want to be clear. It's not stack rank. It's sort of a bucket sort. So you end up in

22 | either exceeds, meets, strongly exceeds, things like that. But it's not a stack rank. As a

23 | result, I don't think it has some of the same characteristics as an actual stack rank." Plaintiff

24 | believes and alleges that this statement was knowingly untrue when made and was made to

25 | mislead Yahoo's employees and to cover up the disparate and discriminatory impact of the

26 | QPR Process. Defendant Yahoo and Mayer were under pressure from investors and

27 | internet pundits to reduce Yahoo's employee headcount at the same time that Mayer was

28 | increasing headcount through acquiring companies and their "acquihire" employees.

1  Marissa Mayer became CEO on a wave of optimism and then engaged in a sleight of hand
2  to terminate large numbers of employees without announcing a single layoff. Yahoo was
3  informed of the illegal and destructive effect the QPR Process was having on its employees
4  and continued the QPR Process in place without oversight or employee safeguards.

5       22.     On November 7, 2013, Mayer again publicly denied that the QPR Process was
6  in any way similar to Stack Ranking. Mayer publicly stated that managers exercised
7  significant discretion in their implementation of the QPR Process. But in fact first-tier
8  managers had no meaningful discretion and were bound by the specific instructions from,
9  and the manipulative actions by, their supervisors and management above.

10      23.     Managers who objected to the draconian application of the QPR Process or its
11 discriminatory and biased use in specific situations were negated and retaliated against by
12 their supervisors.

13      24.     The QPR Process was openly manipulated by Yahoo's top executives in the
14 Media Org for their private reasons. For example, on about November 10, 2014, Gregory
15 Anderson was attending the prestigious Knight-Wallace fellowship at the University of
16 Michigan on approved leave. At that time Anderson reported to Plaintiff. Because Anderson
17 was absent on leave during Q4 2014 he should have been exempt from the QPR Process
18 for that quarter and any subsequent quarters he was absent on approved leave. In late
19 November 2014, without consulting with Plaintiff, Liberman decided to apply the QPR
20 Process to Anderson during Q4 2014, and unilaterally determined that Anderson was in the
21 bottom 5% of all of Yahoo's employees. Liberman immediately terminated Anderson while
22 he was on leave. Although Plaintiff should have terminated Anderson because Anderson
23 reported to Plaintiff, Liberman did not inform Plaintiff of the termination until immediately
24 before Liberman had personally dismissed Anderson. There was no oversight of Liberman's
25 manipulation of the QPR Process, no apparent requirement that she report to anyone, no
26 transparency for employees to understand what was happening and why.

27      25.     Defendant Yahoo grew quickly by acquiring small start-ups and their
28 employees, in what were referred to as "acquihires". Plaintiff is informed and alleges that by

1  April 2015 Yahoo had 11,400 employees, of which 5,814 had been hired since Q3 of 2012,
2  mostly by acquihires while Mayer was CEO. Plaintiff is informed and alleges that since
3  August 2012, the QPR Process has resulted on several occasions in Defendant Yahoo
4  terminating more than 50 employees within a 30-day period.
5       26.    Plaintiff is informed and alleges that Defendant Yahoo uses the QPR System
6  as a means to terminate large numbers of employees without the required compliance with
7  California's Worker Adjustment and Retraining Notification Act (California Labor Code
8  Sections 1400 et seq.) and the federal Worker Adjustment And Retraining Notification
9  provisions of 29 USC Section 2101 et seq., together with its adopted regulations (20 CFR
10 Part 639) (collectively "the WARN Acts"). Because of Yahoo management's manipulation of
11 the QPR Process without safeguards or accountability, terminations under the QPR Process
12 are without good cause or good faith, are falsely based on non-existent or pretextual cause,
13 and are made in violation of the legal rights and contractual expectations of Yahoo's
14 employees. Defendant Yahoo should have notified large numbers of its employees of their
15 rights under the California and federal WARN Acts prior to their termination, and Yahoo
16 should have compensated those employees in an amount not currently known.

17                **PLAINTIFF'S COMPLIANCE WITH ADMINISTRATIVE PREREQUISITES**

18      27.    Plaintiff has filed a timely administrative complaint with the California
19 Department of Fair Employment and Housing ("DFEH") as DFEH Number 503319-149717,
20 "dual-filed" with the Equal Employment Opportunity Commission ("EEOC") as EEOC
21 Number 37A-2015-02773-C, alleging gender-based discrimination and retaliation and
22 naming Defendant as the party committing the discrimination. Plaintiff received a Right to
23 Sue Notice from the DFEH dated April 12, 2016 and a Right to Sue notice from the EEOC
24 on July 7, 2016, and brings this action in a timely manner.

25                            **FIRST CAUSE OF ACTION**
                 **Gender-Based Discrimination in Violation of the FEHA**
26                            **By Defendant Yahoo**

27      28.    The allegations of paragraphs 1 through 27 are incorporated by reference into
28 this cause of action.

JON R. PARSONS
L A W   F I R M

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF        Page 9

1    29.    On January 30, 2015, Defendant Yahoo terminated Plaintiff's employment.

2    30.    Plaintiff is informed and alleges that he was terminated from his employment

3 at Yahoo because of his gender in violation of the California Fair Employment and Housing

4 Act ("FEHA"), California Government Code Section 12940(a) and in retaliation for his

5 assistance of others who were being discriminated against on the basis of gender.

6    31.    Plaintiff is informed and alleges that he was terminated from his employment

7 as a result of the actual and intentional gender-based discrimination of Defendant Yahoo

8 through the actions of its supervisory employees and in retaliation for his assistance of

9 others who were being discriminated against on the basis of gender.

10    32.    Plaintiff bases his belief of intentional discrimination in part on statements that

11 he heard Susan Kittenplan, a subordinate of Savitt, make on about August 8, 2014.

12 Defendant Yahoo was looking to hire for the position of Editor in Chief for the Autos

13 Magazine and Kittenplan stated to the Plaintiff and another senior editor that Yahoo was

14 looking for a female to fill the position, whereupon Kittenplan added "I know that sounds

15 bad." Plaintiff held the position of Editor of Yahoo Autos at the time of his termination and he

16 had discussed with Kittenplan his desire to remain in the position. Instead, he was

17 immediately terminated, even though it took approximately three months for Yahoo to hire a

18 new Editor of Yahoo Autos. On about April 27, 2015, Defendant Yahoo appointed Sharon

19 Silke Carty to the position of Editor in Chief for Auto's digital magazine, in compliance with

20 Kittenplan's stated plans for a female. Ms. Carty was less qualified than the rejected male

21 candidates for the position. While under Plaintiff's direction Yahoo Autos was a large,

22 profitable, and growing property, but under Ms. Carty's direction Yahoo Autos deteriorated

23 to the point where it was shut down entirely within a year.

24    33.    Plaintiff further bases his belief of intentional discrimination in part on

25 statements attributed to Cecile Lal, a former Senior Director of Product Management for

26 Defendant Yahoo. Defendant Yahoo filed suit against Cecile Lal in the Superior Court for

27 Santa Clara County (Yahoo! Inc. v. C. Lal, Case No. 1-15-CV-280271) alleging that Lal

28 breached her duty of confidentiality in making certain statements. On July 1, 2015, the

JON R. PARSONS
LAW FIRM

parties stipulated to a permanent injunction and payment of damages attributable to Lal's breach of employment agreement. Among the breaching statements was Lal's account of a Calibration meeting that included Mayer and Savitt. In discussing the performance review to be given a male employee named Vivek Sharma, Savitt is alleged to have stated that "He just annoys me. I don't want to be around him." Sharma and Savitt worked in different areas of Yahoo and had little interaction. Mayer agreed that Savitt's biased feelings about Sharma were sufficient justification to downgrade his review. As a result Sharma soon left Yahoo. Plaintiff alleges that Mayer encouraged and fostered the use of the QPR Program to accommodate management's subjective biases and personal opinions, to the detriment of Yahoo's male employees.

34. Plaintiff further bases his belief of intentional discrimination in part on Savitt's apparent manipulation of the QPR Process. When Savitt began at Yahoo the top managers reporting to her in the Media Org, including the chief editors of the verticals and magazines, were less than 20% female. Within a year and a half those top managers were more than 80% female. At the time that this percentage of female managers reporting to Savitt increased so dramatically, the number of female reporters and presenters in the industry generally declined by 10 percentage points.

35. Plaintiff is informed and alleges that Savitt has publicly expressed support for increasing the number of women in media and has intentionally hired and promoted women because of their gender, while terminating, demoting or laying off male employees because of their gender. Plaintiff is informed and alleges that of the approximately 16 senior-level editorial employees hired or promoted by Savitt in the Media Org in approximately an 18-month period, 14 of them, or 87%, were female.

36. Plaintiff is informed and alleges that in the Media Org females with the same Employee Score as male employees were treated better than their male counterparts. For example, in 2014-2015 a female, Jennifer Karmon, received a lower Employee Score than the Plaintiff. Karmon was permitted to appeal her rating, while the Plaintiff was terminated the day his rating was delivered with no opportunity to appeal. After Plaintiff's termination

1 Karmon was elevated into a role previously held by the Plaintiff, Editor of Yahoo Homes.

2 Thus, a female employee who received a "Miss" rating was allowed to appeal and then

3 promoted to Editor of Yahoo Homes, while the incumbent male in that position, who

4 received the similar rating, was immediately dismissed with no appeal permitted.

5      37.    Plaintiff is informed and alleges that in the Media Org female employees in

6 management positions were allowed to leave voluntarily rather than being fired, more

7 frequently than male employees in similar positions, who were more often fired without an

8 opportunity to find new employment and resign. Termination has a detrimental effect on

9 subsequent employment opportunities that is not present when an employee resigns, or is

10 given time to find a new position. This resulted in males in the Media Org being fired in

11 numbers and percentages much greater than female employees, and thereby experiencing

12 a disparate detrimental effect on their future employment prospects.

13      38.    In the alternative, if the QPR Process was not being intentionally manipulated

14 to achieve discriminatory results, then Plaintiff alleges he was terminated from his

15 employment as a result of the disparate discriminatory impact and effect of the QPR

16 Process as applied and implemented in the Media Org. In any event, Defendant Yahoo

17 knew or should have known that the QPR Process was having an unjustified and

18 discriminatory impact on the basis of gender in at least the Media Org.

19      39.    In doing and permitting the above acts Defendant Yahoo engaged in

20 discrimination against Plaintiff on the basis of his gender in violation of the Fair Employment

21 and Housing Act, Government Code Section 12940(a).

22      40.    As a proximate result of the gender-based discrimination by Defendant Yahoo

23 through the actions of Mayer, Liberman and Savitt, Plaintiff has been denied employment

24 for which he was suited and qualified, in a position that was available, and without

25 justification. Plaintiff has suffered financial and economic losses because of the loss of

26 employment in an amount not currently known. Plaintiff's damages include but are not

27 limited to lost wages in the form of back pay and front pay, as well as lost benefits, bonuses,

28 and stock rights.

1     41.    As a further proximate result of the discrimination by Defendant Yahoo through

2  the actions of Mayer, Liberman, and Savitt, and the precipitous timing of and pretextual

3  explanation for the termination, Plaintiff has suffered embarrassment, shock, outrage, and

4  other severe emotional distress. The timing and manner of the termination contributed to

5  Plaintiff's difficulty in finding replacement employment.

6     42.    As a further proximate result of the discrimination by Defendant Yahoo through

7  the actions of Mayer, Liberman, and Savitt, Plaintiff has been required to retain legal

8  assistance and has incurred costs and expenses to defend and exercise his statutory rights.

9  Plaintiff requests an award of attorney's fees.

10     43.    The actions of Defendant Yahoo through the actions of Mayer, Liberman, and

11  Savitt as alleged, constitute "malice," "oppression," and "fraud"" as defined at California Civil

12  Code Section 3294(c) and Plaintiff is entitled to punitive or exemplary damages against said

13  Defendant to make an example of and to punish Defendant in an amount to be determined.

14
**SECOND CAUSE OF ACTION**
**Gender-Based Discrimination in Violation of Title VII**
15
**Against Defendant Yahoo**

16     44.    The allegations of paragraphs 1 through 43 are incorporated by reference into

17  this cause of action.

18     45.    On January 30, 2015 Defendant Yahoo terminated Plaintiff's employment.

19     46.    Plaintiff is informed and alleges that he was terminated from his employment

20  at Yahoo because of his gender in violation of Title VII of the Civil Rights Act of 1964, 42

21  U.S.C. Sections 2000e-2(a) et seq. and in retaliation for his assistance of others who were

22  being discriminated against on the basis of gender.

23     47.    Plaintiff is informed and alleges that he was terminated from his employment

24  as a result of the actual and intentional gender-based discrimination by Defendant Yahoo

25  through the actions of Mayer, Liberman and Savitt and in retaliation for his assistance of

26  others who were being discriminated against on the basis of gender.

27     48.    Plaintiff is further informed and alleges that he was terminated from his

28  employment as a result of the discriminatory disparate impact of the QPR Process that

JON R. PARSONS
L A W   F I R M

1  Defendant Yahoo permitted to be manipulated by the actions of Mayer, Liberman, Savitt,

2  and other managers, with knowledge that the QPR Process was having a discriminatory

3  disparate impact on the basis of gender.

4       49.    In doing and permitting the above acts Defendant Yahoo through the actions

5  of Mayer, Liberman, and Savitt, engaged in discrimination against Plaintiff on the basis of

6  his gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e-

7  2(a) et seq.

8       50.    As a proximate result of the gender-based discrimination by Defendant Yahoo

9  through the actions of Mayer, Liberman and Savitt, Plaintiff had been denied employment

10 for which he was suited and qualified, in a position that was available, and without

11 justification. Plaintiff has suffered financial and economic losses because of the loss of

12 employment in an amount not currently known. Plaintiff's damages include but are not

13 limited to lost wages in the form of back pay and front pay, as well as lost benefits, bonuses,

14 and stock rights.

15      51.    As a further proximate result of the discrimination by Defendant Yahoo through

16 the actions of Mayer, Liberman, and Savitt, and the manner and immediate timing of the

17 termination, Plaintiff has suffered embarrassment, shock, outrage, and other emotional

18 distress. The timing and manner of the termination contributed to Plaintiff's difficulty in

19 finding replacement employment.

20      52.    As a further proximate result of the discrimination by Defendant Yahoo through

21 the actions of Mayer, Liberman, and Savitt, Plaintiff has been required to retain legal

22 assistance, and has incurred costs and expenses to defend and exercise his statutory

23 rights. Plaintiff requests an award of attorney's fees.

24      53.    The actions of Defendant Yahoo through the actions of Mayer, Liberman and

25 Savitt, constitute intentional discriminatory treatment wherein Defendant Yahoo through the

26 actions of Mayer, Liberman, and Savitt, acted maliciously and with reckless indifference to

27 Plaintiff's rights. Plaintiff is entitled to punitive damages against Defendant Yahoo in an

28 amount to be determined.

## THIRD CAUSE OF ACTION
### Termination in Violation of Public Policy
### By Defendant Yahoo

54.     The allegations of paragraphs 1 through 53 are incorporated by reference into this cause of action.

55.     In doing and permitting the above acts of intentional discrimination and termination of Plaintiff's employment by manipulation of the QPR Process, Defendant Yahoo has terminated Plaintiff in violation of the public policy of the State of California.

56.     Plaintiff is informed and alleges that the motivation for his termination included Defendant's retaliation against Plaintiff for his complaint to Yahoo management about the illegal manipulation of the QPR Process. Plaintiff complained to Defendant Yahoo about manipulation of the QPR Process that Plaintiff believed violated California and federal employment laws, fair employment practices, and Yahoo's agreement to deal fairly and honestly with its employees. Defendant Yahoo accelerated Plaintiff's termination date from its originally scheduled date in February to January 30, 2015, because Defendant feared that Plaintiff would appeal his Employee Score and continue to complain about the scores being given to other male employees. Plaintiff was terminated without Megan Liberman performing any review of Plaintiff's performance. After Plaintiff's termination Liberman created a post-dated justification which she attempted unsuccessfully to have placed in Plaintiff's personnel file.

56.1.     Prior to Liberman becoming a senior executive in the Media Org, a representative from Human Resources attended all Media Org Calibration sessions. Liberman discontinued having Human Resources oversight at the Calibration sessions, which allowed Liberman to arbitrarily change employee scores.

56.2.     During a Calibration review for the first quarter of 2014, Plaintiff, Liberman and two of Plaintiff's managers met over the phone to discuss the scores for the Plaintiff's team, which had recently come under Liberman's management. During this meeting, Liberman expressed a desire to lower two employees' "achieves" scores because she didn't think they were going to "fit in" with the new team she was building. Plaintiff and

JON R. PARSONS
LAW FIRM

1  his two managers protested to Liberman, explaining that the employees had done

2  satisfactory work for the first quarter and met their goals. They informed Liberman that it

3  would be unfair to lower their scores when their current managers were pleased with their

4  performance. Liberman eventually conceded but Plaintiff and his managers later discussed

5  whether they should talk with HR about the incident, concerned that Liberman appeared

6  inclined to abuse the QPR process.

7       56.3.  In August 2014, Jennifer Karmon had her Employee Score of about 1.9

8  reduced to a 1.0 without any input or feedback from Plaintiff, who was then Ms. Karmon's

9  direct manager. This reduction would have made it very difficult for the employee to recover

10  and would likely have led to her later termination. Plaintiff complained to Human Resources

11  and to Savitt's chief of staff, Anne Fenice, about this reduction. The Score was later

12  changed. Although Liberman told Plaintiff that she had not changed the score, personnel in

13  Human Resources confirmed that Liberman had in fact made the change.

14       56.4.  As part of the QPR process for the fourth quarter of 2014, Plaintiff

15  submitted a list of five employees who Plaintiff believed were entitled to an "Exceeds" score,

16  which was within the ratings distribution guidelines provided to Plaintiff by Yahoo Human

17  Resources Department. This list consisted of three males and two females, and Plaintiff

18  provided Liberman with a prioritized list, which listed one of the males at the top and one of

19  the females last. Liberman unilaterally lowered the scores of all three males and gave only

20  two of plaintiff's employees an "Exceeds" rating, both of which were females. Several times

21  in January 2015, Plaintiff tried to contact Liberman to ask why she lowered the ratings of the

22  males while keeping the females in "Exceeds" but she ignored him, going so far as to

23  decline a meeting request. Plaintiff requested the assistance of Human Resources

24  Representative Artimiss Fagerlund but received no assistance. Finally, on January 30,

25  2015, during his own telephonic performance review with Liberman and Fagerlund, Plaintiff

26  was dismissed.

27       56.5.  Plaintiff subsequently learned that Fagerlund informed senior

28  management in the Media Org in January 2015 that due to headcount reduction targets, she

1  was recommending that an average rating of 2.3 or lower over four quarters be used to

2  identify employees to be terminated. As a result of the "occasionally misses" rating that

3  Liberman gave to Plaintiff, he was on that list. In an email exchange Savitt was asked

4  whether Plaintiff's termination date could be accelerated to a date earlier than mid-February,

5  when the employees having a 2.3 four-quarter average rating or lower were scheduled to be

6  terminated. Although Savitt replied in the negative, Plaintiff's termination was indeed

7  accelerated and he was fired on January 30, 2015. Plaintiff is informed and alleges that this

8  acceleration was the result of Plaintiff asking Liberman and Fagerlund earlier that same

9  week to explain the lowered scores for the three males in his group, and Defendant's fears

10  that Plaintiff would raise a discrimination claim on behalf of those males. In fact, one of the

11  males whose rating was lowered by Liberman, despite being the top performer on Plaintiff's

12  team that quarter, was in fact terminated in February. Those terminated in February were

13  told they were being cut as part of a layoff, rather than under the QPR Process, but in fact

14  they had been targeted for termination through the manipulation of the QPR Process.

15  Meanwhile, Plaintiff was terminated earlier than these other similarly situated employees,

16  and was told it was for low performance rather than a layoff. This demonstrates the

17  deceptive and manipulative way that QPR was administered by Defendant Yahoo, and that

18  Plaintiff was singled out and terminated in retaliation for his support of other employees and

19  to prevent him from escalating his complaints about Liberman's discriminatory application of

20  the QPR Process to terminate male employees.

21      57.    As a proximate result of the wrongful termination discrimination by Defendant

22  Yahoo through the actions of Mayer, Liberman and Savitt, Plaintiff has been denied

23  employment for which he was suited and qualified, in a position that was available, and

24  without justification. Plaintiff has suffered financial and economic losses because of the loss

25  of employment in an amount not currently known. Plaintiff's damages include but are not

26  limited to lost wages in the form of back pay and front pay, as well as lost benefits, bonuses,

27  and stock rights.

28      58.    As a further proximate result of the wrongful termination by Defendant Yahoo

1 | through the actions of Mayer, Liberman, and Savitt, and the manner and immediate timing

2 | of the termination, Plaintiff has suffered embarrassment, shock, outrage, and other severe

3 | emotional distress. The timing and manner of the termination have contributed to Plaintiff's

4 | difficulty in finding replacement employment.

5 |     59.     As a further proximate result of Defendant Yahoo's termination of Plaintiff in

6 | violation of public policy, Plaintiff has been required to retain legal assistance, and has

7 | incurred costs and expenses to defend and exercise his statutory and contractual rights.

8 | Plaintiff requests an award of attorney's fees.

9 |     60.     The actions of Defendant Yahoo constitute "malice," "oppression," and "fraud"

10 | as defined at California Civil Code Section 3294(c) and Plaintiff is entitled to punitive or

11 | exemplary damages against Defendant Yahoo in an amount to be determined.

12 |
**FOURTH CAUSE OF ACTION**
**Violation of the California Unfair Competition Law**

13 |
**With Request for Injunctive Relief**
**Against Defendant Yahoo**

14 |

15 |     61.     The allegations of paragraphs 1 through 60 are incorporated by reference into

16 | this cause of action.

17 |     62.     Plaintiff brings this action in his own name for his own benefit and on behalf of

18 | the general public pursuant to California Business & Professions Code Section 17204.

19 | Plaintiff is a person who has suffered injury in fact and has lost money or property as a

20 | result of Defendants' unlawful, unfair, and fraudulent business practices.

21 |     63.     Plaintiff is informed and alleges that within the last four (4) years Defendant

22 | Yahoo has engaged and continues to engage in unlawful, unfair, and fraudulent business

23 | practices, including but not limited to the use of the QPR Process as alleged above and the

24 | making of untrue and misleading statements to current and prospective employees

25 | concerning the QPR Process (collectively the "Practices"). The Practices violate the

26 | California Unfair Competition Law (the "UCL"; Bus. & Prof. Code §§17200 et seq.).

27 |     64.     The Practices include, but are not limited to, the following acts which have

28 | been, and continue to be, performed by Defendant Yahoo as a continuing business

JON R. PARSONS
LAW FIRM

1 | practice:

64.1.  The knowing and consistent use of the QPR Process to avoid accountability under the federal WARN Act, without sufficient or proper advance notice, and without the payment of compensation and benefits due to Yahoo's terminated employees under the Act.

64.2.  The knowing and consistent use of the QPR Process to avoid accountability under the California WARN Act, without sufficient or proper advance notice, and without the payment of compensation and benefits due to Yahoo's terminated employees under the WARN Acts.

64.3.  The knowing and consistent use of the QPR Process to permit managers to engage in unlawful and discriminatory employment practices without any safeguards, standards, or accountability.

64.4.  The knowing and consistent use of the QPR Process to breach Yahoo's contractual obligations to its employees, including but not limited to Yahoo's assumed duty of good faith and honest dealing, by terminating employees for unjust, discriminatory, or capricious reasons under the guise of just cause terminations.

65.  As a proximate result of the Practices Defendant Yahoo has acquired and continues to acquire money and property from others in violation of the UCL in an amount not currently known and to be determined later.

66.  As a further proximate result of the Practices Defendant Yahoo has obtained an unfair advantage over its competitors. Defendant has benefited from the money and property it wrongly obtained and has further benefited by operating outside the constraints of the law. Equity requires that the money and property wrongly acquired should be disgorged for the benefit of those wrongly deprived.

67.  Plaintiff is informed and alleges that unless restrained and enjoined from the continued violation of the UCL as alleged above, Defendant will continue to violate the UCL in derogation of the public policy and laws of the State of California and to the detriment of thousands of its citizens.

JON R. PARSONS
LAW FIRM

1     68.    There is no adequate remedy at law available to Plaintiff and this Court is

2 empowered to issue an injunction enjoining Defendant Yahoo from the continued

3 performance of the Practices, and to issue orders for the appointment of a receiver as may

4 be necessary, and to restore to any person any money or property acquired by Defendant,

5 all pursuant to California Business and Professions Code Section 17203.

## FIFTH CAUSE OF ACTION
### Request for Declaratory Relief Concerning
### Defendant Yahoo's QPR Process

8     69.    The allegations of paragraphs 1 through 68 are incorporated by reference into

9 this cause of action.

10     70.    A controversy has arisen and currently exists between Plaintiff and Defendant

11 Yahoo in that Plaintiff alleges that Defendant Yahoo's use of the QPR Process violates the

12 WARN Acts, is knowingly and routinely used for discriminatory purposes in a manner to

13 avoid accountability, and operates in breach of Yahoo's duties of good faith and honest

14 dealing assumed by Yahoo in its writings and statements. Plaintiff further asserts that

15 terminations under the QPR Process are not terminations for cause pursuant to 20 USC

16 Section 2101(a)(6)(A) and do constitute layoffs for purposes of California Labor Code

17 Section 1400(c). Defendant Yahoo denies each of those allegations. Plaintiff requests a

18 declaration concerning Defendant Yahoo's QPR Process, including Plaintiff's rights and

19 remedies under the Warn Acts and pursuant to the Declaratory Judgment Act (28 U.S.C. §§

20 2201-2202).

### FIRST COUNT
### Defendant Yahoo's QPR Process Violates the WARN Acts

23     71.    Plaintiff requests a judicial declaration that Defendant Yahoo's use of the QPR

24 Process constitutes a violation of the federal WARN Act and that pursuant to 29 U.S. Code

25 Section 2104(a) Plaintiff is entitled to statutory damages and penalties for 60 days including:

26     71.1.    Back pay for each day of violation at a rate of compensation not less

27 than the higher of (i) the average regular rate received by Plaintiff during the last 3 years of

28 the employee's employment; or (ii) the final regular rate received by Plaintiff;

1    71.2.   Benefits under Plaintiff's employee benefit plan, including the cost of

2 medical expenses incurred during the employment loss which would have been covered

3 under an employee benefit plan if the employment loss had not occurred;

4    71.3.   A civil penalty of $500.00 a day for each day that Plaintiff was entitled

5 to have received notice under the federal WARN Acts but did not do so;

6    71.4.   Reasonable attorney's fees required for this declaration and recovery

7 of Plaintiff's statutory damages and penalties.

8    72.    Plaintiff requests a judicial declaration that Defendant Yahoo's officers and

9 directors who directly operated Defendant's facilities and who intentionally caused the

10 violation of the federal WARN Act as alleged above are personally liable for Defendant

11 Yahoo's federal WARN Act damages and penalties.

12                                SECOND COUNT
                **Defendant Yahoo's QPR Process Knowingly Facilitates**
13              **Discriminatory and Unfair Employment Practices**

14    73.    Plaintiff requests a judicial declaration that Defendant Yahoo's use of the QPR

15 Process constitutes a violation of the California WARN Act and that pursuant to Labor Code

16 Section 1402(a) Plaintiff is entitled to statutory damages and penalties for 60 days including:

17    73.1.   Back pay at the average regular rate of compensation received by

18 Plaintiff during the last three years of his employment, or Plaintiff's final rate of

19 compensation, whichever is higher;

20    73.2   The value of the cost of any benefits to which Plaintiff would have been

21 entitled had his employment not been lost, including the cost of any medical expenses

22 incurred by Plaintiff that would have been covered under an employee benefit plan;

23    73.3.   A civil penalty of $500.00 a day for each day that Plaintiff was entitled

24 to have received notice under the California WARN Act but did not do so;

25    73.4.   Reasonable attorney's fees required for this declaration and recovery

26 of Plaintiff's statutory damages and penalties pursuant to Labor Code Section 1403.

27    74.    Plaintiff requests a judicial declaration that Defendant Yahoo's officers and

28 directors who directly operated Defendant's facilities and who caused the violation of the

1 | California WARN Act as alleged above are personally liable for Defendant Yahoo's

2 | California WARN Act damages and penalties.

3 | **THIRD COUNT**<br>**Defendant Yahoo's QPR Process Knowingly Facilitates**

4 | **Discriminatory and Unfair Employment Practices**

5 | 75.   Plaintiff requests a judicial declaration that Defendant Yahoo, through the

6 | actions of its highest ranking executives, has knowingly permitted its managers to use the

7 | QPR Process to engage in unlawful and discriminatory employment practices and make

8 | employment decisions based on personal bias without accountability.

9 | **FOURTH COUNT**<br>**Defendant Yahoo's QPR Process Violates Yahoo's**

10 | **Assumed Duty of Good Faith and Honest Dealing**

11 | 76.   Plaintiff requests a judicial declaration that Defendant Yahoo has breached its

12 | legal and contractual obligations to its employees by using the discriminatory application of

13 | the QPR Process to claim just cause for terminations which were capricious, arbitrary, and

14 | the product of bias. As a result of this misdirection employees were terminated without just

15 | cause, as part of quarterly layoffs, under the pretense of performance-related reasons for

16 | the layoffs.

17 | **DEMAND FOR TRIAL BY JURY**

18 | 77.   Plaintiff requests that his claims be tried to a jury.

19 | **PRAYER FOR RELIEF**

20 | WHEREFORE, Plaintiff prays for judgment against Defendant Yahoo as follows:

21 | 1.   For general damages against Defendant Yahoo due to gender-based

22 | discrimination and retaliation in violation of the FEHA in a sum not currently known, and to

23 | be determined according to proof;

24 | 2.   For special damages against Defendant Yahoo due to gender -based

25 | discrimination and retaliation in violation of FEHA in a sum not currently known, and to be

26 | determined according to proof including but not limited to lost wages in the form of back pay

27 | and front pay, as well as lost benefits, bonuses, and stock rights;

28 | 3.   For general damages against Defendant Yahoo due to gender-based

JON R. PARSONS<br>L A W   F I R M

discrimination and retaliation in violation of Title VII in a sum not currently known, and to be determined according to proof;

4. For special damages against Defendant Yahoo due to gender-based discrimination and retaliation in violation of Title VII in a sum not currently known, and to be determined according to proof including but not limited to lost wages in the form of back pay and front pay, as well as lost benefits, bonuses, and stock rights;

5. For general damages against Defendant Yahoo due to termination in violation of public policy in a sum not currently known, and to be determined according to proof;

6. For special damages against Defendant Yahoo due to termination in violation of public policy in a sum not currently known, and to be determined according to proof including but not limited to lost wages in the form of back pay and front pay, as well as lost benefits, bonuses, and stock rights;

7. For punitive damages against Defendant Yahoo on Causes of Action 1, 2, and 3 in a sum not currently known, and to be determined according to proof;

8. For restitution as provided by California Business & Professions Code Section 17200 et seq.;

9. For an injunction stopping Defendant Yahoo's continued violation of California Business & Professions Code Section 17200;

10. For a judicial declaration that Defendant Yahoo's use of the QPR Process violates the federal WARN Act and that Plaintiff is entitled to back pay, benefits, and a civil penalty of $500.00 a day for each day that Plaintiff was entitled to have received notice under the federal WARN Acts but did not do so, together with reasonable legal fees.

11. For a judicial declaration that Defendant Yahoo's use of the QPR Process violates the California WARN Act and that Plaintiff is entitled to back pay, benefits, and a civil penalty of $500.00 a day for each day that Plaintiff was entitled to have received notice under the federal WARN Acts but did not do so, together with reasonable legal fees;

12. For a judicial declaration that Defendant Yahoo's officers and directors who intentionally caused the violation of the federal WARN Act as alleged above are personally

liable for Defendant Yahoo's federal WARN Act damages and penalties;

13.     For a judicial declaration that Defendant Yahoo's officers and directors who directly operated Defendant's facilities and who caused the violation of the California WARN Act as alleged above may be personally liable for Defendant Yahoo's California WARN Act damages and penalties California pursuant to California Labor Code Sections 1400-1408;

14.     For a judicial declaration that Defendant Yahoo has permitted its managers to use the QPR Process to avoid accountability and to engage in unlawful and discriminatory employment practices and caused Plaintiff damages;

15.     For a judicial declaration that Defendant Yahoo has breached its contractual obligations to its employees by using the QPR Process to claim just cause for terminations which were capricious, arbitrary, and the product of bias and caused Plaintiff damages;

16.     For attorney's fees and costs of suit incurred herein; and

17.     For such other and further relief as the Court deems just and proper.

Dated: October 3, 2016             Jon R. Parsons Law Firm

by Jon R. Parsons
Attorney for Plaintiff
Scott Ard

### DEMAND FOR TRIAL BY JURY

Plaintiff requests that his claims be tried to a jury.

JON R. PARSONS
LAW FIRM