MORGAN, LEWIS & BOCKIUS LLP
Melinda S. Riechert, Bar No. 65504
melinda.riechert@morganlewis.com
Claire M. Lesikar, Bar No. 311180
claire.lesikar@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:    +1.650.843.4000
Fax:   +1.650.843.4001

Attorneys for Defendant
YAHOO HOLDINGS, INC., successor in interest,
in part, to liabilities of YAHOO! INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT ARD, an individual,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>YAHOO! INC., a Delaware corporation,<br><br>　　　　　Defendant. | Lead Case No. 5:16-CV-05635-NC<br><br>Jointly Administered with<br>Case No. 5:16-CV-00527-NC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　　　October 11, 2017<br>Time:　　　1:00 P.M.<br>Location:　Courtroom 7, 4th Floor<br>Judge:　　Honorable Nathanael Cousins |
| GREGORY ANDERSON, an individual,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>YAHOO! INC., a Delaware corporation,<br><br>　　　　　Defendant. | |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

DB2/ 31932045

# TABLE OF CONTENTS

Page

I. ARGUMENT .................................................................................................................... 1

    A. Anderson Was A Long Time Poor Performer As Amply Demonstrated By The Scores He Received From Managers and Direct Reports Who Had No Involvement In The Decision To Terminate His Employment. ............................... 1

    B. Anderson Presented No Evidence That His Termination Was A Pretext For Gender Discrimination. ......................................................................................... 3

    C. Ard Did Not Add Value To The Team And Did Not Keep His Manager Informed About What He Was Doing. .................................................................. 5

    D. Plaintiffs' Evidence Does Not Support Their Claims That Yahoo Terminated Them Because They Are Male. ............................................................ 6

    E. The Statistical Composition Of Kathy Savitt's Organization Directly Contradicts Plaintiffs' Assertions. .......................................................................... 9

    F. Plaintiffs' Cited Legal Authorities Do Not Support Their Argument. ................. 10

    G. Plaintiffs Fail To Rebut Yahoo's Evidence That It Did Not Violate WARN Or Cal-WARN. .................................................................................................... 12

II. CONCLUSION ............................................................................................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DB2/ 31932045

i

DEFENDANT'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Antonio v. Wards Cove Packing Co., Inc.*,
   10 F.3d 1485 (9th Cir. 1993)...........................................................................................10

*Domino v. New England Fish Co.*,
   727 F.2d 1429 (9th Cir. 1984)..........................................................................................11

*EEOC v. Joe's Stone Crab, Inc.*,
   220 F.3d 1263 (11th Cir. 2000)........................................................................................10

*Serri v. Santa Clara Univ.*,
   226 Cal. App. 4th 830 (2014).............................................................................................7

*Standard v. A.B.E.L. Servs., Inc.*,
   161 F.3d 1318 (11th Cir. 1998)..........................................................................................7

*Watson v. Ft. Worth Bank and Trust*,
   487 U.S. 977 (1988).........................................................................................................11

**STATUTES**

29 U.S.C. § 2101(a)(6).............................................................................................................12

Cal. Lab. Code § 1401(a) .........................................................................................................12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DB2/ 31932045

ii

DEFENDANT'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

Plaintiffs' Opposition to Yahoo's Summary Judgment Motion fails to rebut Yahoo's undisputed evidence regarding the reasons for their termination, or raise a triable issue of fact that Yahoo terminated their employment because they are men. Nor have Plaintiffs presented evidence that Yahoo violated either WARN or Cal-WARN.

## I. ARGUMENT

### A. Anderson Was A Long Time Poor Performer As Amply Demonstrated By The Scores He Received From Managers and Direct Reports Who Had No Involvement In The Decision To Terminate His Employment.

In support of his claim that Yahoo terminated his employment because he is male, Anderson claims he was "well-qualified employee" *in November 2014* based on the following evidence: (1) his *self-assessments* in 2011 and 2013; (2) an unattributed quote from "page 533" in Exhibit N to Plaintiffs' Opposition that does not exist; (3) his raise and job transfer *in 2012*; (4) his receipt of restricted stock units from Yahoo *in March 2013*; (5) an assertion that he recruited high-performing editors for Autos for which he mis-cites to page 505 of Exhibit M (a "Proprietary Information Obligations Checklist"), and (6) a quote from Megan Liberman, who stated: "[w]hat I hear on Greg is that it will be a disaster for us on autos if we let him go now," which referred to Anderson's relationship with Autos advertisers (*see* Hill Dep. 49:9-20, Exh. 55). *See* Opposition pp. 6, 7-8. None of this "evidence" raises a triable issue of material fact. Nor does it establish that discriminatory animus was a substantial motivating factor for Anderson's termination. Indeed, the undisputed evidence establishes that Anderson *never* received an Exceeds rating on any QPR score. He was identified as a poor manager by his managers, *including Plaintiff Scott Ard,* and his direct reports who completed annual anonymous Yahoo Employee Engagement Surveys (YEES), in which they answered questions rating his management skills. In addition, his duties were completely taken on by Ard, who added them to his own when Anderson went on his personal leave, showing it would not, as he alleges, be a "disaster for Autos" if he left.

Anderson claims that the YEES scores do not justify his termination because Yahoo did not rely on the scores in assessing a manager's performance, citing to the testimony of HR employee Valree Hill. Opposition p. 9, lines 16-19. This misstates the evidence. Valree Hill

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DB2/ 31932045

1

DEFENDANT'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

testified only that she could not recall whether YEES scores were used in assessing performance, not that they were not. Hill Dep. 31: 2-13. Other witnesses confirmed that YEES scores were considered in determining who was on the list of poorly performing managers. Higgins Dep. 74:22-24. Anderson also argues that his 2013 YEES scores were better than his 2012 YEES scores. Opposition 9:24-26. But he does not dispute that in 2013 he again received much less favorable scores than Yahoo managers received overall. Anderson Dep. 115:16-116:4, Exh. 9.[1]

The YEES scores provide an objective measurement of Anderson's performance from the perspective of his direct reports, who had no input in the decision to terminate his employment, and who Anderson has not argued were biased in any way against him. It is indisputable that Anderson was a poor manager. In fact, even Ard -- Anderson's co-Plaintiff -- emphasized Anderson's managerial weaknesses during his performance reviews and when Human Resources requested an explanation for Anderson's consistently low scores. Ard Dep. Vol. 2, 319:16-20, Exh. 4; Brotherton Dec. ¶6, Exh. C.

Anderson argues that he received increasingly higher scores and this is somehow indicative of competent performance. Opposition pp. 8-9. However, Anderson concedes that he never received an Exceeds rating, and each of Anderson's QPR scores was below average (2.5 on a five-point scale). Opposition p. 8, lines 20-21. His four quarter average score in the year of his termination was below the 2.5 minimum for managers. Khroad Dep. 65:1-16, Exh. 10. Moreover, Anderson does not dispute that three of Anderson's four managers who gave him these scores were male. Brotherton Dec. ¶5.

Anderson claims that if he had received a score for Q3 2014 it would have demonstrated increased performance. He provides no evidence to support such a claim, including no testimony from his manager, Plaintiff Ard, who was the person responsible for giving him a score that quarter. Anderson Dep. 140:9-17. Ard does not recall rating Anderson and Anderson never requested a score for that quarter. Ard Dep. 284:1-2, 18-20; Anderson Dep. 140:18-141:9. In

---

[1] Anderson misleadingly claims that there was insufficient data for Anderson's YEES scores to count and that he had too few responders. Opposition 10:1-4. As his YEES scores show, he did have the five responders required for his scores to count, and the "insufficient data" only refers to places in the report marked with a ---, and thus did not apply to the actual scores that Anderson received. Anderson Dep. Ex 8 and 9.

Morgan, Lewis & Bockius LLP
Attorneys At Law
Silicon Valley

2

DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

DB2/ 31932045

1   sum, Anderson was a poor performer and he has not produced evidence to the contrary.

2         **B.**    **Anderson Presented No Evidence That His Termination Was A Pretext For Gender Discrimination.**

4   Yahoo created the bottom 5% list in October 2014, based on the last four quarter's QPR scores. Khroad Dep. 105:25-106:20, 107:4-13, Exh. 18. Anderson does not dispute that his QPR scores put him on the October 2014 list of the bottom 5% of all Yahoo employees. To get around this fact, and to support of his claim that Yahoo terminated his employment because he is male, Anderson argues that *if* his QPR score had not been reduced in Q1 2014, he would not have been on the bottom 5% list. Opposition p. 8, lines 15-16. This tortured argument does not show that the reason for Anderson's termination was his gender and that Yahoo's reason for his termination was pretextual. It was not.

12   Nor has Anderson shown that his Q1 QPR score was reduced because he is male. His manager, Liberman, had only just taken over managing the group that Anderson was in and did not personally know Anderson or his work. Liberman Dep. 22:13-23:3; 27:18-28:1; 33:12-15. But she talked to others in the Media Organization, including Rob Barrett, about Anderson, and learned that he was a poorly performing manager. Liberman Dep. 26:13-28:1; 32:5-33:1. She also knew that Anderson's manager Ard was not set on a score of 2.5. Liberman Dep. 108:18-20, Exh. 70 ("[F]or Greg . . . . I think you can challenge Scott [Ard] on that and push back a little—he didn't sound 100% confident in the capabilities either, admitted to not being able to speak much to his performance and wasn't set on 2.5 either."). Based on all the inputs she received, she determined that the score she could justify was a 2.2. Liberman Dep. 115:3-24. Anderson presents no evidence to suggest that she did so because he is male.

23   In any event, Anderson was identified as a poor performer and Yahoo was planning on terminating his employment *even before his placement on the bottom 5% list*. Fenice Dep. Exh. 28; Savitt Dep. 63:10-66:23. Anderson had been identified as a poor performer and Yahoo had discussed terminating his employment in March and April 2014 well before his placement on the bottom 5% list October 2014. Khroad Dep. 107:4-13, Exh. 18. But rather than terminating his employment in March or April 2014, as it considered doing, Yahoo agreed not to terminate his

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

DEFENDANT'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

DB2/ 31932045

employment at that time so that he could attend the prestigious Fellowship he wanted to attend. Reses Dep. 127:8-128:5. Exemplary of the adage no good deed goes unpunished Anderson now complains that Yahoo's delayed termination of his employment was "unusual" and thus supports his claim that it was gender-based. Opposition 7:15.

Moreover, even if Anderson had not been on the bottom 5% list, he would still have been on the serial skimmers list and the list of poorly performing managers, even without the reduction to his Q1 2014 score. Khroad Dep. 65:1-16, Exh. 10. As Anderson admits in his opposition, even if his Q1 2014 score had not been reduced, he still would have averaged at 2.33 QPR score. Opposition p. 11, lines 4-9. This still shows sustained sub-average performance below the 2.5 threshold Yahoo expected of its managers.

Anderson's argument that Yahoo should have found a position for him on his return from leave likewise lacks merit, and fails to show that Yahoo terminated his employment because he is male. Yahoo's Personal Leave Policy does not guarantee reemployment, and in fact, expressly acknowledges that employment may be terminated for legitimate business reasons during a leave. Brotherton Decl. ¶7, Exh. E. Yahoo's decision not to provide Anderson with an alternate position does not demonstrate pretext for gender discrimination where Anderson's performance was woefully deficient.

Anderson argues that he can show gender discrimination, because "five (5) male leaders . . were terminated or otherwise had their roles replaced by females." Opposition 7:8-10. Plaintiffs cite to Ard's testimony, wherein he states that two male leaders were terminated while two others were transferred to new roles. Opposition 7:10, Ard Dep. 340:17-25. However, without showing that he had personal knowledge regarding the circumstances of these employees' terminations and transfers, and without any evidence, and Plaintiffs provide none, as to why Yahoo terminated or transferred these employees, the bare assertion that certain employees were terminated or transferred does not support a claim that Yahoo terminated Plaintiffs' employment because they are male.

In a last ditch effort to demonstrate pretext, Anderson suggests that the "unwillingness to acknowledge who made the decision to terminate shows a consciousness of guilt." Opposition p.

Morgan, Lewis & Bockius LLP
Attorneys at Law
Silicon Valley

DB2/ 31932045

4

DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

11, lines 18-19. He cites no legal authority or rationale for such a conclusion. Nor is there any mystery to the decision. As the testimony cited in Plaintiffs' Opposition at 11:14-28 shows, Mayer and Reses made the decision to terminate the employment of poor performers, such as those on the bottom 5% list, but did not make the specific decision to terminate the employment of Anderson, who was on the list. Plaintiffs' argument does not disprove that Yahoo made the decision to terminate Anderson's employment because he was a chronic low performer whose QPR scores put him at the bottom 5 percent of the entire company.

### C. Ard Did Not Add Value To The Team And Did Not Keep His Manager Informed About What He Was Doing.

Ard's claim that he was a good performer is not supported by the evidence he cites to. For example, Ard claims he received five "Exceeds" ratings in 7 quarters in 2012 and 2013. Opposition p. 12, lines 10-11. In support of this assertion, he cites to page 843 of Exhibit M, which is not authenticated and not properly before the court. Ard next claims he was in the top 20% of performers in Savitt's organization. Opposition p. 12, lines 11-12. Ard cites to a nonexistent page of Exhibit N for this assertion. To show his QPR scores, Ard cites to a document that does not contain his name (p. 833 of Exhibit M). Opposition p. 13, lines 6-7. Further, the documents that Ard points to in support of his argument are not authenticated and thus not properly before the Court. Exhibit N at 1111-12.

Yahoo's evidence, on the other hand, shows that as of the end of Q3 2014, Ard's QPR year-to-date average was 2.30.[2] Khroad Dep. 65:1-16, Exh. 10. This was below the 2.5 minimum that Yahoo expected of its managers. *Id.* Contrary to Ard's assertions, he was not vital to the organization. When Liberman was considering letting Ard go she spoke with his male colleagues, who said that Ard was not "providing a vital function to the company . . ." Liberman

---

[2] Ard argues that the average ratings Yahoo used in its moving papers are false. Opposition 12-13. This is not correct. Rather, the parties are using different averages. Ard's year-to-date QPR average (Q1 2014 to Q3 2014) was 2.30 (as stated by Yahoo), whereas his four-quarter rolling QPR average (Q3 2014 to Q3 2014) was 2.5 (as stated by Ard). Khroad Dep. 65:1-16, Exh. 10. Regardless, the 2.5 threshold applies equally to both averages, because it references the "QPR average," without specifying "rolling" or "year-to-date." *Id.* Ard also argues that it was false to say that his scores were trending down. However, Exhibit 10 specifically states that his scores were trending down. *Id.* ("Trending" is shown in the far right column).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DB2/ 31932045

5

DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

1  Dep. 329:22-330: 21.  His lack of contribution to the organization is underscored by the fact that a
2  subordinate two levels below him assumed his duties without interruption to the business.
3  Liberman Dep. 332:2-12.

4        Moreover, Ard did not adequately respond to Liberman's repeated concern that she could
5  not identify what he was doing every day.  Liberman Dep. 175:16-176:2. In the Opposition, Ard
6  argues that he satisfied this request by sending Liberman his quarterly *goals.*  Opposition p. 14,
7  lines 10-12, 16-18.  However, these are not descriptive of his day-to-day work, but instead
8  prospective achievements that he hoped to accomplish.  Liberman instead needed information on
9  what work Ard was performing as distinct from his team members, which he did not provide.
10 Liberman Dep. 220:20-222:6. As a manager, it was not Liberman's responsibility to investigate
11 how a direct report was spending his time when his value to the team was not evident.

12       Ard suggests there was inconsistent testimony as to who made the decision to terminate
13 his employment. Opposition 15:2-11.  But the evidence he cites shows no such inconsistency.
14 Liberman made the decision. Liberman Dep. 307:4-9; Savitt Dep. 140:13-141:4. Nor is there
15 support for Ard's argument that Yahoo terminated his employment because he received one
16 Occasional Misses score. Opposition 15:12-16.  While Ard did receive an Occasional Misses
17 score for Q4 2014, this is not why his employment was terminated and he cites no evidence to
18 support this proposition. Nor is there any inconsistency as to the reasons for Ard's termination.
19 Opposition 16:5-21. There is no inconsistency between terminating Ard for performance issues
20 because there was no clear need to keep him and he was not adding sufficient value, as
21 communicated by his male colleagues. Liberman Dep. 329:22-330: 21.  Whether he "should have
22 been considered for a reduction in force" is irrelevant and fails to support a claim that Yahoo
23 terminated his employment because he is male.

      **D.**    **Plaintiffs' Evidence Does Not Support Their Claims That Yahoo Terminated Them Because They Are Male.**

26       Plaintiffs do not identify any discriminatory statements made by their managers to support
27 their claims of gender discrimination.  In support of their opposition, they submit the declarations
28 of two male co-workers, but neither asserts or presents any evidence that Yahoo discriminated

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

DEFENDANT'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

DB2/ 31932045

against him because he is male. In an effort to overcome this deficiency, Plaintiffs claim that Susan Kittenplan said "wouldn't it be great if we could get a female for the EIC Autos role." Opposition p. 23, lines 10-11.  While Kittenplan denies having said this, it is still a stray remark by a person who played no role in the decision to terminate either Plaintiff's employment and is not evidence of gender discrimination. *See Serri v. Santa Clara Univ*., 226 Cal. App. 4th 830, 867 (2014) (disregarding alleged discriminatory statements where, as here, they have no connection to the adverse employment action); *Standard v. A.B.E.L. Servs., Inc*., 161 F.3d 1318, 1330 (11th Cir. 1998) (finding "remarks by non-decisionmakers or remarks unrelated to the decision making process itself are not direct evidence of discrimination."); Kittenplan Dep. 73:3-15.

Out of approximately 450 employees in the media organization, Plaintiffs identify only the following instances where they claim women were treated better than men: (1) Kathy Savitt's recommendation in January 2014 to raise the scores of two of the women and lower the scores of two of the men who reported to her (but not to change the score of Ard); [Opposition 4.1]; (2) Liberman's decision to reduce one male employee's score for Q1 2014 [Opposition 4.2], and make minor reductions to the scores of some of the male employees in Ard's organization for Q4 2014 [Opposition 4.4]; (3) Higgins advising Ard that he should not go to bat over the score of one man (not men, as Ard argues) [Opposition 4.3]; (4) the hiring of Sharon Carty for the EIC Autos position and other females as magazine leaders; (4) the fact that Jennifer Karmon appealed her QPR score given during her employment whereas Ard could not appeal the QPR score he received on his termination date. Contrary to Plaintiffs' assertions, the facts surrounding each of Plaintiffs' examples demonstrate that not one of these instances support Plaintiffs' claims of gender discrimination.

The fact that in January 2014 (a year before Ard's termination) Savitt changed the scores of some of the employees who reported to her does not support Plaintiffs' claim that Yahoo discriminated against them because they are male. Opposition 17:2-4.  Notably, Savitt did not lower the score of Ard.  Plaintiff's Exhibit N at 1077.  Savitt explained in detail how she came to the decision to make the changes she did.  Savitt testified that she spoke to these employees'

Morgan, Lewis & Bockius LLP
Attorneys At Law
Silicon Valley

DB2/ 31932045

7

DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

peers and managers, relied on her interactions with each of these employees, and evaluated their goals and strategies in light of the overall goals of the company. Savitt Dep. 33:20-34:2 (Savitt's discussion regarding the first employee, who received no score because she was on maternity leave); 34:20-37:4 (Savitt's discussion of how she determined the second employee's QPR score), 37:20-38:25 (continued discussion of the second employee); 39:1-41:19 (Savitt's discussion of how she determined the third employee's QPR score); 41:20-43:8 (Savitt's discussion of how she determined the fourth employee's QPR score); 43:13-44:7 (Savitt's discussion of how she determined the fifth employee's QPR score); 44:8-46:5 (Savitt's discussion of how she determined the sixth employee's QPR score). Ard fails to rebut her explanations. Nor does Ard demonstrate any correlation between Savitt lowering scores a year before his termination and Megan Liberman's decision to termination his employment. Ard never addresses the fact that Megan Liberman hired a man to run the Techology Magazine and a man to run the Finance Magazine. Liberman Dep. 323:17-324:3. All of Liberman's star hires, highest paid employees, and most senior employees are men. Liberman Dep. 323:17-324:3, 326:23-328:18.

Nor does Liberman's decision to reduce a single male employee's score in Q1 2014 and to make minor changes to the QPR scores of some of Ard's male direct reports in Q4 2014 support Plaintiffs' claim that she discriminated against them because they are male. Liberman testified that she changed the ratings for Q4 2014 based on Ard's descriptions of their contributions. Liberman 335:18-339:20. Further, the changes were minor, resulting in the detraction of a few tenths of a point. Liberman Dep. 336:6-9 (QPR changed from 3.2 to 2.9), 337:15-338:2 (QPR changed from 3.1 to 3.0), 338:22-339:3 (QPR changed from 3.1 to 2.9), 339:11-20 (QPR changed from 3.0 to 2.8).

Nor does Higgins' advice to Ard that he should not go to bat over the termination of one employee who had consistently low QPR scores evidence gender discrimination. Finally, Karmon's appeal of her QPR score *during her employment* is different from Ard's request to appeal his QPR score *after his termination*, and thus does not prove gender discrimination. Opposition 20:12-14.

///

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DB2/ 31932045

8

DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

1   Plaintiffs misstate the facts surrounding Yahoo's decision to hire Sharon Carty for the EIC Autos position. Opposition 24:17-23.  Contrary to Plaintiffs' unsubstantiated clam, the position was offered to, and rejected by, Eddie Alterman, a male.  Kittenplan Dep. 79:6-17; 19:22-24. Yahoo's decision not to produce Alterman's offer packet in discovery (as it is not relevant and protected by third party privacy rights) does not mean the offer was not made.  Yahoo's evidence in support of its motion explained what it was looking for in an editor in chief, that Carty had the qualifications, and Plaintiffs did not.

### E. The Statistical Composition Of Kathy Savitt's Organization Directly Contradicts Plaintiffs' Assertions.

Plaintiffs' contentions regarding the statistical composition of the "Media Org" are unsupported by the data.  In January 2014, when Kathy Savitt took over the Media Organization, the organization she ran was comprised of approximately 54% men and 46% women.  Fong Decl. Exh. A.  In September 2015, when Savitt left Yahoo, the organization was comprised of approximately 53% men and 45% women with 1% undeclared.  *Id.*

Plaintiffs claim that "the disparate impact of Yahoo's hiring practices and use of the QPR process" is shown "by the dramatic change in gender composition of managers in the Media Org."[3]  Again, the data flatly disproves Plaintiffs' contention.  Plaintiffs only look at managers at M5 and above, ignoring managers at levels M1 through M4, which constitute 60% of managers in January 2014 and 68% of managers in September 2015.  If Plaintiffs had looked at all managers, instead of cherry picking certain levels, they would see almost no change over a period of a year and a half.  In January 2014, when Savitt took over the Media Organization, approximately 59% of management (M-levels and E-levels) in the was male and 41% female.  *Id.*  In September 2015, when Savitt left Yahoo, 57% of management was male and 43% female.  *Id.*  Contrary to Plaintiffs' assertions, there is no statistically significant evidence of disparity.

Nor does Plaintiffs' argument that the magazine editors-in-chief hired by Kittenplan are primarily female support their claim that they were fired because they are male.  Plaintiffs do not

---

[3] Plaintiffs cite to no data for the "Media Organization" as opposed to Kathy Savitt's organization overall, which included Media, Marketing, and Customer Experience.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DB2/ 31932045

9

DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

claim that Kittenplan was involved in the decision to terminate either Ard's or Anderson's employment. In addition, evidence that females were hired to run magazines is not evidence of gender discrimination in the absence of evidence of the gender of applicants for these positions. *See EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1276 (11th Cir. 2000) (overruled on other grounds, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006)) ("[H]olding employers liable for statistical imbalances per se is inconsistent with Title VII's plain language and statutory purpose."). Further, "if employers could be held liable for an unlawful disparate impact on account of statistical workforce imbalances . . . they would be forced to use . . . other forms of preferential treatment in their hiring and promotion policies, in express contravention of Title VII, in order to insulate themselves from the potential that would arise if their workforce demographics did not closely mirror the demographics of their surrounding community or local competitors." *Id.* If employers could be held liable for discrimination using solely their statistical makeup as evidence, employers would be forced to consider gender in termination decisions. This approach is contrary to FEHA's statutory purpose.

Contrary to their arguments at 6.3 of the Opposition, neither Ard nor Anderson was replaced by a female. Their roles became obsolete and their responsibilities were absorbed by others in the organization. The undisputed evidence confirms that when Anderson went on his leave of absence, Ard added Anderson's duties to his own. Ard Dep. 90:4-7. When Ard left, an employee two levels below Ard absorbed his duties in addition to her own. Liberman Dep. 309:21-310:15. The Autos EIC role was a newly-created position responsible for running the newly-created Autos Digital Magazine. Kittenplan Dep. 37:9-13, 83:3-15. It was not, as Plaintiffs now argue, a legacy of either Ard's or Anderson's former role.

### F. Plaintiffs' Cited Legal Authorities Do Not Support Their Argument.

Plaintiffs cite to *Antonio v. Wards Cove Packing Co., Inc.* 10 F.3d 1485, 1491 (9th Cir. 1993) for the proposition that practices like word-of-mouth recruiting can cause a discriminatory impact. Plaintiffs misstate the holding of *Antonio*, which found that that "word-of-mouth recruiting by predominantly white superintendents and foremen, recruiting among native villagers only for cannery jobs . . . contributed to a sense that separate hiring channels did in fact exist . . .

Morgan, Lewis & Bockius LLP
Attorneys at Law
Silicon Valley

10

DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

DB2/ 31932045

1 ." *Id.* at 1501. Here, Yahoo did not recruit for positions in female-only forums, nor do Plaintiffs contend as such.

Plaintiffs' reliance on *Domino v. New England Fish Co.* 727 F.2d 1429, 1435-36 (9th Cir. 1984) is similarly misplaced. *Domino* found that word-of-mouth recruiting was part of the employer's hiring practices that were not facially neutral. The court stated: "We agree with Nefco that a disparate treatment analysis may have been the more appropriate approach in this case, *but only because Nefco's hiring practices were not facially neutral*." *Id.* at 1436. The court noted that "[u]nder these circumstances, the absence of objective hiring criteria provided a ready mechanism for discrimination [which] combined with Nefco's use of racial labels for certain job categories and evidence of specific acts of discrimination, established intentional employment discrimination." *Id.* at 1436. Plaintiffs do not contend that Yahoo's hiring practices were not facially neutral, nor is there evidence that Yahoo used gender labels for certain job categories, as in *Domino*.

Plaintiffs also rely on *Watson v. Ft. Worth Bank and Trust* 487 U.S. 977, 989-991 (1988) to suggest that subjective assessments by supervisors permit a finding of discrimination. Plaintiffs mischaracterize the holding of this case. In *Watson*, the Court held that "subjective or discretionary employment practices *may* be analyzed under the disparate impact approach in appropriate cases." *Id.* at 991. However, plaintiffs must show more than "statistical disparities in the employer's work force. The plaintiff must begin by identifying the specific employment practice that is challenged." *Id.* at 994. After identifying the practice at issue, "causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id.* at 994-95. As discussed *supra*, the statistics do not show that the practice in question (the QPR process) resulted in the exclusion of males from the Media Organization. The percentages of males and females in Kathy Savitt's organization remained largely unchanged between January 2014 and September 2015.

Plaintiffs cannot establish disparate impact on males from Yahoo's use of the QPR process, and the decisions they cite do not support their position.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DB2/ 31932045

11

DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

G. **Plaintiffs Fail To Rebut Yahoo's Evidence That It Did Not Violate WARN Or Cal-WARN.**

Plaintiffs admit that the QPR process was used to manage performance, but argue, without any supporting evidence, that many employees terminated under the QPR process were not truly poor performers and that Yahoo was trying to conceal the number of employees its was letting go by disguising layoffs as performance based termination. Not only is such a claim irrelevant to any of the issues in this case, it is not true. Yahoo identified the number of headcount reductions to the public on a quarterly basis in its earnings calls. *See, e.g.*, Opposition, Ard Exhibits at 422.

In support of their arguments under WARN and Cal-WARN, and to respond to Yahoo's undisputed evidence that it did not involuntarily terminate a sufficient number of employees to trigger either WARN or Cal-WARN, Plaintiffs argue that voluntary termination should be counted as well as involuntary terminations. But this is not the law. Only involuntary terminations are counted under WARN and Cal-WARN. *See* 29 U.S.C. § 2101(a)(6) ("the term 'employment loss' means . . . an employment termination, other than a discharge for cause, voluntary departure, or retirement . . ."); Cal. Labor Code § 1401(a) ("An employer may not *order* a mass layoff, relocation, or termination at a covered establishment . . .").

Plaintiffs then incorrectly assume that each voluntary termination was a "mutual separation." Not so. Plaintiffs have presented no evidence to support their assertion that all voluntary terminations are mutual separations. There are many other reasons why employees would voluntarily quit their jobs including to move, take a new job, retire, travel, obtain better compensation, or leave the workforce. Accordingly, Plaintiffs' claims for violation of WARN and Cal-WARN fail.

II. **CONCLUSION**

Contrary to the arguments made in Plaintiffs' Opposition, this case is not about whether Yahoo wanted to reduce headcount to avoid layoffs. Opposition § 1.1. It is also not, as Plaintiffs argue, about whether Yahoo developed the QPR tool to avoid paying severance benefits. Opposition § 1.2. Rather, this case is about whether Plaintiffs' were fired because they are men, and whether Yahoo involuntarily terminated a sufficient number of employees from the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DB2/ 31932045

12

DEFENDANT'S REPLY ISO MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC

Sunnyvale facility to trigger liability under WARN and Cal-WARN.

Plaintiffs have failed to show that QPR was used in the Media Orgamization to discriminate against men [Opposition § 1.3] or to avoid WARN Act disclosures. Opposition § 2.4. Plaintiffs' Opposition fails to rebut Yahoo's reasons for terminating Plaintiffs' employment and does not support their claim that Yahoo terminated their employment because they are male. Nor does Plaintiffs' Opposition rebut Yahoo's undisputed evidence that the number of involuntary terminations did not trigger either WARN or Cal-WARN with respect to Plaintiffs' terminations. Lastly, Plaintiffs do not challenge binding Ninth Circuit precedent that former employees, such as Plaintiffs, do not have standing to seek declaratory relief from allegedly illegal employer actions, because they can no longer benefit from such relief.

For the foregoing reasons, summary judgment should be granted in Yahoo's favor.

Dated: September 15, 2017          MORGAN, LEWIS & BOCKIUS LLP

By */s/ Melinda S. Riechert*
    Melinda S. Riechert
    Attorneys for Defendant

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DB2/ 31932045

13

DEFENDANT'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT
LEAD CASE NO. 5:16-CV-05635-NC